UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

AUBREY STANLEY #257143,

    Plaintiff,

v.                                                            Case No. 2:07-cv-139
                                                                      HON. GORDON J. QUIST

MICHAEL SMITH, et al.,

    Defendants.

_____/

## REPORT AND RECOMMENDATION

        Plaintiff Aubrey Stanley #257143, an inmate currently confined at the Alger Maximum Correctional Facility (LMF), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Corrections Officer Michael Smith, Corrections Officer Roy Headley, Corrections Officer R. Shubert, Corrections Officer T. Wilkins, and Corrections Officer Joseph Cusick.

        Plaintiff's complaint alleges that on March 23, 2006, while Plaintiff was incarcerated at the Chippewa Correctional Facility (URF), Defendant Smith pulled on Plaintiff's belly chains so hard that it left indentations around Plaintiff's waist. In addition, Defendant Smith wrote a false misconduct ticket on Plaintiff. On May 4, 2006, Defendant Headley assaulted Plaintiff by twisting his handcuffs, which cut Plaintiff and caused him pain. Plaintiff subsequently received a false misconduct ticket from Michael Sheldon Pelto. A nurse came and looked at Plaintiff's injury, but left because it was not life threatening. Corrections Officer Conners took video footage of the assault, but Resident Unit Manager Thomas Mackie conspired with staff to prevent Plaintiff from obtaining the video footage. In addition, Plaintiff claims that Resident Unit Officer Bruckley conspired with other staff to lie about Plaintiff's injuries.

On July 18, 2006, Plaintiff told Bruckley that he was having difficulty breathing and that his chest was hurting. Plaintiff lay down and could not get back up because "something was wrong" with him. Prison guards subsequently rushed into Plaintiff's cell with a shield and used "excessive force" to restrain him. Plaintiff was roughly dragged from his cell and placed on the floor on top of one of his blankets. Plaintiff was forced to walk down the stairs to see the nurse by Defendant Cusick, who was twisting and bending Plaintiff's right wrist. Once in the medical area, Plaintiff told Sergeant Anderson and R.N. Pietrangelo that he could not feel his hand. Defendant Shubert and another officer kept jerking Plaintiff's head and smacking him in the head. Plaintiff states that this incident was filmed by Officer C. Phiffer. Plaintiff was then taken by ambulance to War Memorial Hospital. En route to the hospital, the paramedics told Plaintiff that his blood sugar was 49, which was why he was so weak.

Plaintiff claims that while he was at the hospital, Defendant Wilkins "searched" Plaintiff's cell and planted a razor in his legal papers. Plaintiff discovered the razor upon his return and reported the discovery to prison officials. Plaintiff turned the razor over to Inspector McDonald. Around the end of July, Plaintiff received two affidavits from other prisoners who were willing to testify regarding what had been done to Plaintiff. On August 6, 2006, Plaintiff wrote to Warden Jeri Ann Sherry and requested protection. On August 11, 2006, Plaintiff was transferred to LMF. On August 24, 2006, Plaintiff requested a criminal complaint form from the Sault Ste. Marie Prosecutor. On October 2, 2006, Plaintiff received a written response and filed a criminal complaint against Defendants Cusick, Wilkins, and Shubert. Plaintiff grieved the alleged assault to step III, without success.

Plaintiff claims that Defendants' actions violated his rights under the First, Eighth and Fourteenth Amendments to the United States Constitution. Plaintiff is suing Defendants in their individual and official capacities and is seeking compensatory and punitive damages.

Presently before the Court is the Defendants' Motion for Summary Judgment, (docket #44) pursuant to Fed. R. Civ. P. 56. Plaintiff has filed responses, a motion to amend, and a motion to supplement (docket #61, #67, #70, and #76) and the matter is ready for decision. Because both sides have asked that the Court consider evidentiary materials beyond the pleadings, the standards applicable to summary judgment apply. *See* Fed. R. Civ. P. 12(b).

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir.

1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

In their brief in support of the motion for summary judgment, Defendants contend that there is no evidence showing that they acted wantonly with intent to punish Plaintiff, or that there was any physical injury. Therefore, Defendants assert that they are entitled to summary judgment on Plaintiff's Eighth Amendment claims. The Eighth Amendment embodies a constitutional limitation on the power of the states to punish those convicted of a crime. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *See Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981); *Trop v. Dulles*, 356 U.S. 86, 101 (1958). The Eighth Amendment also prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Rhodes*, 452 U.S. at 346. Among unnecessary and wanton infliction of pain are those that are "totally without penological justification." *Id.*

Generally, restrictions and even harsh conditions of confinement are not necessarily cruel and unusual punishment prohibited by the Eighth Amendment. *Rhodes*, 452 U.S. 347. The Supreme Court has held that "whenever guards use force to keep order," the standards enunciated in *Whitley*, 475 U.S. 312, should be applied. *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). Under *Whitley*, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7. In determining whether the use of force is wanton and unnecessary, the court should evaluate the need for application of force, the relationship between that need and the amount of force used, the threat "reasonably perceived by the responsible officials," and any efforts made to temper the severity of

the forceful response. *Id.* (citing *Whitley*, 475 U.S. at 321); *accord McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990). Physical restraints are constitutionally permissible where there is penological justification for their use. *Rhodes*, 452 U.S. at 346; *Jones v. Toombs*, No. 95-1395, 1996 WL 67750, at *1 (6th Cir. Feb. 15, 1996); *Hayes v. Toombs*, No. 91-890, 1994 WL 28606, at * 1 (6th Cir. Feb. 1, 1994); *Rivers v. Pitcher*, No. 95-1167, 1995 WL 603313, at *2 (6th Cir. Oct. 12, 1995).

Defendants state that on March 23, 2006, Defendant Smith placed belly chains on Plaintiff in order to escort him to the dental hygienist. In his affidavit, Defendant Smith attests that once the wrist restraints had been placed on Plaintiff, Defendant Smith attempted to put the belly chains on Plaintiff. While Defendant Smith was attempting to put on the belly restraints, Plaintiff pulled on the chains and injured Defendant Smith's fingers. Defendant Smith immediately released the chains and reported to health care, where he filed out an accident report. (*See* Defendants' Exhibit 1, pp. 1-2, and Attachment A.) Defendant Smith then wrote a major misconduct ticket on Plaintiff, for which Plaintiff was found guilty. (*See* Defendants' Exhibit 1, Attachment B and C.) In the reason for finding section of the report, Hearing Officer Theut stated:

> On 3-23-06, while officer Smith was applying restraints to prisoner Stanley and was about to secure the belly chains around prisoner Stanley's waist he very suddenly and forcefully pulled against the restraints twisting officer M. Smith's right side and causing an abrasion to his pinky finger and dragging the belly chain across his middle finger and ring fingers of his left hand. I find that this was a physical resistance and a physical interfere [sic] with officer M. Smith and a [sic] intentional non-consensual physical touching of officer Smith by prisoner Stanley done with the purpose of injuring and abusing officer Smith. Prisoner Stanley is not believed in his statement that officer M. Smith assaulted him because officer Smith indicates that he was just applying restraints when prisoner Stanley suddenly and forcefully pulled against the restraints which twisted his wrist and caused an abrasion to his pinky finger, was treated at health care and this was a physical resistence to the reporting officer. I find no credible evidence that the reporting officer has lied or fabricated

>　his statements.  Officer M. Smith is clear and consistent in his statements and found credible.  The charge is upheld.

(*See* Defendants' Exhibit 1, Attachment C.)  Based on the record, the undersigned notes that any use of force by Defendant Smith was not excessive in violation of the Eighth Amendment.

In addition, Defendants offer a copy of Plaintiff's medical record for March 23, 2006, which shows that he was seen at 1:03 p.m.  The nurse who examined Plaintiff made the following observation:

> Small red mark noted on right side above hip.  No break in skin, no [signs and symptoms] of infection noted. [Plaintiff] was evaluated cell side.  When nurse attempted to speak with [Plaintiff] he became angry his voice was raised and he was using foul language.

(*See* Defendant's Exhibit 8, p. 132.)  Defendants contend that, based on the medical evidence, Plaintiff suffered only a *de minimis* injury from the belly chains, which is insufficient to support an Eighth Amendment claim.

The undersigned notes that a prisoner must allege that he has suffered or is threatened with suffering actual harm as a result of defendants' acts or omission before he can make a claim with an arguable basis in Eighth Amendment jurisprudence.  *Wilson v. Yaklich*, 148 F.3d 596, 598 (6th Cir. 1998).  As stated by Defendants in this case, the injury suffered by Plaintiff appears to be *de minimis*.  A de minimis use of physical force is beyond constitutional recognition, provided that the use of force is not of a sort "repugnant to mankind."  *Id*. at 9-10 (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986)); *see Norman v. Taylor*, 25 F.3d 1259, 1264 (4th Cir. 1994), *cert. denied* 513 U.S. 1114 (1995) (absent the most extraordinary circumstances, a plaintiff cannot prevail on an Eighth Amendment excessive force claim if his injury is de minimis).  Therefore, the undersigned recommends that Defendant Smith be granted summary judgment on this claim.

With regard to the May 4, 2006, incident, Defendant Headley attests that Plaintiff told him "you're not taking me to yard," but then put his right hand forward to be restrained. Defendant Headley applied the restraints and took Plaintiff to yard, where he removed the restraints without incident. Defendant Headley further attests that Plaintiff never complained of any injury. (*See* Defendants' Exhibit 2, pp. 1-2.) Plaintiff filed a grievance regarding the alleged assault by Defendant Headley, which Plaintiff attached to his complaint. According to the step I response to URF 06-05-1137-26z, Resident Unit Officer Bruckley was interviewed and stated that he and Resident Unit Officer Conners escorted Plaintiff back to the unit from yard on May 4, 2006, and that he did not observe any marks or bruises on Plaintiff when he placed restraints on him. (*See* step I response to URF 06-05-1137-26z, attached to Plaintiff's complaint.) Moreover, the medical records show no entries for May 4, 2006, not even a kite. (*See* Defendants' Exhibit 8.) Therefore, even if Defendant Headley had twisted the restraints, Plaintiff did not suffer an injury which required medical treatment. Federal courts have routinely held that a single push, shove, punch, or blow by a prison guard does not rise to the level of a constitutional violation. *Neal v. Miller*, 778 F. Supp. 378, 383-384 (W.D. Mich. 1991) (collecting cases). The same holds true even when the push or shove appears to be unnecessary. *Hampton v. Alexander*, No. 95-3457, 1996 WL 40237 (6th Cir. Jan. 31, 1996). As noted above, a plaintiff cannot prevail on an Eighth Amendment excessive force claim if his injury is *de minimis* absent extraordinary circumstances. *Norman*, 25 F.3d at 1264. Because Plaintiff has not alleged such extraordinary circumstances, Defendant Headley is entitled to summary judgment on this claim.

With regard to the July 18, 2006, incident Defendants offer the affidavits of Defendants Shubert and Cusick, in which they attest that they assisted other staff in removing Plaintiff from his cell on July 18, 2006, under the supervision of the URF unit supervisor. In

addition, video tape of the incident was viewed by the undersigned, which supports the version of events set forth by Defendants. The affidavits and the videotape of the event show that staff removed Plaintiff from his cell because he was having a hard time breathing. Health Care was notified and a nurse came to Plaintiff's cell. Staff entered the cell with restraints and the shield, Plaintiff was placed in the restraints as a precaution, and then placed on a blanket in the hallway so that he could be examined by R.N. Pietrangelo. R.N. Pietrangelo began her assessment, but then asked that Plaintiff be taken to Health Services so that she could do a more complete examination. Staff slowly pulled Plaintiff down the hallway on the blanket, but when they reached the stairs, Plaintiff was assisted to his feet. When Plaintiff said that he was unable to walk, he was half carried down the stairs by staff. The videotape shows no signs that Plaintiff was handled inappropriately or roughly during this move, or that his restraints were tightened when he complained about them. (*See* Defendants' Exhibits 3, 4, and 7.) Plaintiff was subsequently taken to the hospital where he was evaluated thoroughly.[1] In the opinion of the undersigned, a review of Plaintiff's medical record and the video tape of the alleged assault shows that Defendants Shubert and Cusick did not engage in excessive force on July 18, 2006. Therefore, because there is no genuine issue of material fact that Defendants Shubert and Cusick violated Plaintiff's Eighth Amendment rights, the undersigned recommends granting summary judgment on this issue.

With regard to Plaintiff's claim that Defendant Headley retaliated against him on May 4, 2006, because of his involvement in a critical incident on January 14, 2006, Defendants state

---

[1] As noted by Defendants, Plaintiff's medical records show that as of July 18, 2006, Plaintiff had been on a hunger strike since July 14, 2006. (*See* Defendants' Exhibit 8, p. 42.) At the time that Plaintiff experienced difficulty breathing on July 18, 2006, he was still on the hunger strike and had refused to be evaluated earlier that day. (*See* Defendants' Exhibit 8, pp. 28, 168.) While at the hospital that evening, a chest x-ray was taken which showed no abnormalities. (*See* Defendants' Exhibit 8, p. 163.) Plaintiff continued on his hunger strike until July 22, 2006. (*See* Defendants' Exhibit 8, pp. 4, 10.)

that they are entitled to summary judgment because Plaintiff was not engaged in protected conduct and because he cannot show a causal connection between the two incidents. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, Plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

As noted above, Plaintiff claims that Defendant Headley used excessive force on May 4, 2006, in retaliation for Plaintiff's involvement in a critical incident on January 14, 2006. According to the report of the misconduct hearing dated January 24, 2006, Plaintiff struck Officer Volz on the left side of his face and mouth causing a cut to the inside and outside of Officer Volz' lip. Officer Reed observed Plaintiff strike Officer Volz with a closed fist. Officer Volz required medical treatment at the hospital because of the injury. Restitution was awarded to the MDOC in the amount of $438.60 to be paid by Plaintiff. (*See* Defendants' Exhibit 1, Attachment B, p. 9.) Plaintiff did not file a grievance on Defendant Headley prior to the May 4, 2006, incident. Moreover, as noted by Defendants, there is no evidence to show that Plaintiff suffered any injury as a result of Defendant Headley twisting Plaintiff's restraints on May 4, 2006. In the opinion of the undersigned, the record shows that Plaintiff has failed to meet the test in *Thaddeus-X*. Therefore,

the undersigned recommends that Defendant Headley be granted summary judgment on Plaintiff's retaliation claim.

In addition, as noted by Defendants, Plaintiff's claim that Defendant Wilkins set him up by planting a razor in his cell is entirely conclusory. More than bare assertions of legal conclusions are ordinarily required to satisfy federal notice pleading requirements. *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436-437 (6th Cir. 1988); *Smith v. Rose*, 760 F.2d 102, 106 (6th Cir. 1985); *Jaco v. Bloechle*, 739 F.2d 239, 245 (6th Cir. 1984). Vague and conclusory allegations which are not supported by specific facts cannot sustain a civil rights claim. *Harlow v. Fitzgerald*, 457 U.S. 800, 817-18 (1982) (bare allegations of malice are insufficient to state a claim); *Brooks*, 932 F.2d at 498-499; *Scheid*, 859 F.2d at 436-437. *See also Branham v. Spurgis*, 720 F. Supp. 605, 607, n. 3 (W.D. Mich. 1989). Nor did Plaintiff suffer any adverse consequences as a result of the razor being found in his cell. Therefore, this claim is properly dismissed.

Defendants contend that they are entitled to qualified immunity in this case. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

The procedure for evaluating claims of qualified immunity is tripartite: First, we determine whether a constitutional violation occurred; second, we determine whether the right that was violated was a clearly established right of which a reasonable person would have known;

finally, we determine whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights. *Williams v. Mehra*, 186 F.3d 685, 690 (6th Cir. 1999).

When determining whether a right is clearly established, this court must look first to decisions of the United States Supreme Court, then to decisions of the Sixth Circuit and to other courts within this Circuit, and finally to decisions of other circuits. *Dietrich*, 167 F.3d at 1012. An official action is not necessarily protected by qualified immunity merely because the very action in question has not previously been held to be unlawful. Rather, in light of pre-existing law, the unlawfulness of the official's conduct must be apparent. *Dietrich*, 167 F.3d at 1012; *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991).

When making a qualified immunity analysis, the facts must be interpreted in the light most favorable to the plaintiff. Part of the analysis is to determine whether there are any genuinely disputed questions of material fact. *Kain v. Nesbitt*, 156 F.3d 669, 672 (6th Cir. 1998). Where there is a genuinely disputed question of fact, it is for the trier of fact to resolve, not the judge. "This would be true notwithstanding that the trial judge found the [defendant] officer to be more credible than the plaintiff because it is not for the court to make credibility determinations at this stage of the proceeding." *Id.*

The operation of the qualified immunity standard depends substantially upon the level of generality at which the relevant legal rule is to be identified.

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held

> unlawful, but it is to say that in light of the preexisting law the unlawfulness must be apparent.

*Anderson*, 483 U.S. at 639-40. *See also Durham v. Nu'Man*, 97 F.3d 862, 866 (6th Cir. 1996), *cert. denied*, 520 U.S. 1157 (1997).

> The Sixth Circuit has observed:
>
> A right is not considered clearly established unless it has been authoritatively decided by the United States Supreme Court, the Court of Appeals, or the highest court of the state in which the alleged constitutional violation occurred.

*Durham*, 97 F.3d at 866 (citing *Robinson v. Bibb*, 840 F.2d 349, 351 (6th Cir. 1988)).

Thus qualified immunity is not triggered only where the very action in question was previously held unlawful. *Anderson*, 483 U.S. at 639-40. Rather, the test is whether the contours of the right were sufficiently clear that a reasonable official would understand that what he is doing violated plaintiff's federal rights. *Id.*

Furthermore, a defendant need not actively participate in unlawful conduct in order to be liable under Section 1983. Rather, a defendant may be liable where he has a duty to protect a plaintiff and fails to comply with this duty. *Durham*, 97 F.3d at 866-868 (holding that a nurse and a security guard at a state hospital may be liable under Section 1983 where they do not take action to prevent a patient from being beaten). *See also McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990)(a correctional officer who observes an unlawful beating may be liable under Section 1983 even though he did not actively participate in the beating), and *Bruner v. Dunaway*, 684 F.2d 422 (6th Cir. 1982), *cert. denied sub nom*, *Bates v. Bruner*, 459 U.S. 1171 (1983)(police officers who stood by and observed an unlawful beating by fellow officers could be held liable under Section 1983).

When faced with a qualified immunity defense, the court must first determine whether or not the plaintiff has stated a claim upon which relief can be granted. *Siegert v. Gilley*, 500 U.S. 226, 232 (1991); *Turner*, 119 F.3d at 429. If the court answers that question in the affirmative, the court goes on to determine whether or not the right allegedly violated was clearly established. *Turner*, 119 F.3d at 429. These are both purely legal questions. The immunity issue should not be resolved if there are factual disputes on which the issue of immunity turns such that it cannot be determined before trial whether the defendants' conduct violated clearly established rights. *Hall v. Shipley*, 932 F.2d 1147, 1154 (6th Cir. 1991). As noted above, there is no genuine issue of material fact that Defendants violated Plaintiff's constitutional rights. Therefore, Defendants are entitled to qualified immunity.

Finally, Plaintiff has filed a motion to amend and a motion to supplement (docket #67 and #76). Plaintiff seeks to add Warden Jeri Ann Sherry, Sergeant C. Anderson, R.N. Pietrangelo, Officer Discus and Officer Phiffer. Plaintiff claims that Officers Discus and Phiffer were present when Plaintiff was cuffed during the July 18, 2006, incident, that Anderson and Pietrangelo were present during incidents discussed above, and that Phiffer held the camera. Plaintiff also seeks to add John Doe and Jane Doe Corrections Officers and Jane Doe nurse. However, the amended complaint does not set forth any factual allegations against the John Doe and Jane Doe Defendants. For the reasons set forth above, Plaintiff's claims against Warden Jeri Ann Sherry, Sergeant C. Anderson, R.N. Pietrangelo, Officer Discus and Officer Phiffer lack merit. In addition, Plaintiff fails to adequately allege any claims against the John Doe and Jane Doe Defendants. Therefore, his motions are properly denied as futile.

In summary, in the opinion of the undersigned, Plaintiff has failed to sustain his burden of proof in response to Defendants' motion for summary judgment. Accordingly, it is

recommended that Defendants' Motion for Summary Judgment (Docket #44) be granted and that this case be dismissed in its entirety. In addition, it is recommended that Plaintiff's motion to amend and motion to supplement (docket #67 and #76) be denied as futile.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

/s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:   August 27, 2008